IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| WILLIAM E. BARNES, #351150<br>　　　　Plaintiff,<br>　　v.<br><br>KATHLEEN GREEN<br>MICHAEL N. KING<br>LT. LEWIS<br>SGT. G. WEBSTER<br>P.A. BRUCE<br>DR. LINO QUILO<br>　　　　Defendants. | *<br><br>*<br><br>*<br><br>*<br><br>*<br><br>*<br>*** | CIVIL ACTION NO. JFM-10-2138 |

MEMORANDUM

This 42 U.S.C. § 1983 civil rights complaint, raising failure-to-protect and medical claims, was received for filing on August 4, 2010. ECF No. 1. Plaintiff, an inmate at the Eastern Correctional Institution ("ECI") in Westover, Maryland, alleges that on March 15, 2009, he was assaulted by cellmate Vernon Roary, a known "special needs inmate" and member of the Bloods gang. He contends that ECI staff does not adequately screen people with psychiatric problems such as Roary to keep them separated from others. Plaintiff alleges that staff was aware of Roary's "downward spirals" before the assault took place. He further states that defendants Webster and Lewis gave him their word he would be separated from Roary. ECF No. 1. Plaintiff also claims that the beating made his pre-existing medical conditions worse and he has not been provided proper medical treatment even after sending administrative remedy procedure ("ARP") grievances to the warden. He asks to be provided proper medical treatment and to be compensated for his pain and suffering. *Id*.

Currently pending before the court are defendants Bruce and Quilo's motion to dismiss or, in the alternative, for summary judgment and plaintiff's opposition thereto (ECF Nos. 14 & 18) and the

state defendants' motion to dismiss or, in the alternative, motion for summary judgment and plaintiff's answer.[1] (ECF Nos. 19 & 22). The undersigned has examined the medical and base file records and declarations submitted by the parties and finds that no hearing is necessary. *See* Local Rule 105.6. (D. Md. 2010). For reasons to follow, defendants' papers, construed as motions for summary judgment, shall be granted.

Under revised Fed. R. Civ. P. 56(a):

A party may move for summary judgment, identifying each claim or defense--or the part of each claim or defense--on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to

---

[1] Plaintiff has also submitted a motion for appointment of counsel. ECF No. 21.

2

confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005). The mere existence of a "scintilla" of evidence in support of the non-moving party's case is not sufficient to preclude an order granting summary judgment. *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D. Md. 2001) (citation omitted). Indeed, the court has an affirmative obligation to prevent factually unsupported claims and defenses from going to trial. *See Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humpreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

Failure-to-Protect Claim

According to the base file records provided by the state defendants, on March 14, 2009, defendant Webster was the Officer in Charge ("OIC") of ECI Housing Unit 7. As he was making rounds on D Tier he heard banging and discovered plaintiff standing at his cell door with blood streaming down his face. Webster left the tier to obtain more help. He returned to the cell and subsequently wrote a report indicating that, in his judgment, it looked like there had been a fight in the cell between plaintiff and his cellmate Vernon Roary. Both plaintiff and Roary were taken to the medical department. ECF No. 19, Ex. 1. Plaintiff was treated for bruising of the right cheek, swelling of his right ear, and a laceration to the right temporal area of his face. On March 14, 2009, plaintiff completed a statement indicating that he had been having trouble with Roary for some time

and that Roary fails to take his prescription medication regimen. He further stated that Roary had asked to move to a different cell. Roary's statement indicated that he did not assault plaintiff and that he (Roary) had asked Webster, Lewis, and numerous correctional officers for a cell move. ECF No. 19, Ex. 1.

Adjustment citations were issued on both inmates and at a subsequent adjustment hearing two inmate witnesses testified that plaintiff was bleeding on his way back from chow to his cell. Notwithstanding this testimony, the adjustment hearing officer ("AHO") found that inmate Vernon Roary assaulted plaintiff based upon Webster's report. Plaintiff was found not guilty of rule violations. Roary appealed the finding, claiming that while he and plaintiff were not getting along, he tried to avoid a conflict by advising Lt. Lewis and Webster that he wanted to move out of the cell. *Id*. The OBSCIS enemies lists for both inmates shows that neither Roary nor plaintiff were on each other's lists before the incident, but were placed on the lists afterward.

Defendant Lewis affirms that plaintiff was assigned to the cell with Roary on January 13, 2009. *Id*., Ex. 2 at Lewis Decl. Lewis claims that he does not recall plaintiff or Roary asking for a cell move or mentioning to him that he was having a problem with his cell mate. Further, Lewis does not recall if Sgt. Webster mentioned anything with regard to the two inmates requesting a cell move, either verbally or in writing. *Id*.

The incident was investigated by the Internal Investigative Unit ("IIU"). Both Roary and plaintiff were uncooperative although plaintiff did claim that Roary hit him. Both inmates withdrew their complaints, with plaintiff indicating that he was withdrawing the complaint because the incident "didn't happen." *Id*., Ex. 1.

In his oppositions, plaintiff asserts that his problems began when Sgt. Webster and Lt. Lewis placed him in a cell with Vernon Roary on January 6, 2009. He claims that Roary has "special

4

needs" and was telling everyone he was no longer taking his medications and people were trying to kill him. ECF No. 18. Plaintiff says that Roary's "unstability" was brought to defendants Webster and Lewis's attention and he was promised that something would be done before the assault occurred.[2] He states that he was placed in a cell with a crazy person. *Id*. Plaintiff further claims that the documents provided by the state defendants only show "retaliation from custody" in regard to him signing off administrative remedy procedure grievances and complaints. He alleges that he was not protected by staff "even after being forewarned that trouble was brewing, and only gave fake promises that something would be done soon to no avail." Plaintiff states that he only withdrew his IIU complaint "to press charges" against Roary and did not wish to withdraw his "complaint as to what happened." He further asks for the assistance of counsel. ECF No. 22.

Deliberate indifference in the context of a prisoner failure-to-protect claim requires that a defendant "knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 302-303 (4th Cir. 2004); *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997). Under Fourth Circuit law, liability under the *Farmer* standard requires two showings. First, the evidence must show that the official in question subjectively recognized a substantial risk of harm. It is not enough that the officers *should have* recognized it; they actually must have perceived the risk. *See Rich v. Bruce,* 129 F.3d 336, 340 n. 2 (4th Cir. 1997). Second, the evidence must show that the official in question subjectively recognized that his actions were "inappropriate in light of that risk." *Id*. As with the subjective awareness element, it is not

---

[2] Plaintiff states that Roary was transferred to the mental health unit at Patuxent Institution. The Division of Correction Inmate Locator indicates that he remains housed at ECI.

5

enough that the official *should have* recognized that his actions were inappropriate; the official actually *must have* recognized that his actions were insufficient. *See Brown v. Harris,* 240 F.3d 383, 390-91 (4th Cir. 2001). Further, to state a claim for damages, the inmate must show a serious physical injury. *See De'Lonta v. Angelone*, 330 F. 3d 630, 634 (4th Cir. 2003); *see also Babcock v. White*, 102 F.3d 267, 272-73 (7th Cir. 1996).

The records show that plaintiff suffered facial swelling, bruising and lacerations on March 14, 2009. According to the AHO, the injury occurred as a result of an assault committed by plaintiff's cell mate. He had been housed with cell mate Roary for two months, without incident. Plaintiff has been called upon to rebut defendants' exhibits to bring forth specific, verified evidence showing that either Lewis, Webster, or Warden Green were placed on actual notice of hostilities between plaintiff and cellmate Roary and that plaintiff was subject to a real risk of harm from Roary. He has failed to do so.

## Medical Care Claims

Plaintiff also appears to claim that he was denied medical attention for injuries he experienced as a result of the March 2009 assault and its affect on an unidentified medical condition that existed prior to the incident.

According to the medical records plaintiff has a history of moderate osteoarthritis ("OA") and esophageal reflux disease ("GERD"). On March 14, 2009, plaintiff informed medical staff he was assaulted and kicked in the right side of his face and right ear. He was admitted to the ECI infirmary for observation and treatment. Nurse Sharon Owens noted that plaintiff had swelling and bruising on the right side of his face, right cheek, and right ear. There was no bleeding in his ear and his eardrum was intact. Plaintiff's right eye was bruised and swollen, and his eye was reddened. There was a 2 centimeter superficial cut on his right temple and a cut on his elbow. Owens ordered neurological

checks to be sure that plaintiff did not have a head injury. She treated him with Tylenol for pain, dressings to his right temple and elbow, and ice to the right side of his face and ear to reduce the swelling. Later that day, plaintiff began to complain of right hip, knee, and leg pain. Ultram, an analgesic opiate, was prescribed. ECF No. 14, Ex. A at Quilo Aff.; Ex.. B at pgs. 2-22 & 35-38.

The following day, plaintiff informed a nurse that the Ultram was helping with his arthritis pain. He was evaluated in the ECI infirmary on March 16, 2009. Physician's Assistant ("PA") Maryam Messforosh found that he had increased tenderness in the area around the eye. Plaintiff informed the PA that he had increased pain in the periorbital area. He had no trouble opening or closing his mouth, no pain when eating, no blurred vision, and he denied difficulties with his hearing. Messforosh reviewed plaintiff's facial x-rays and found no obvious facial fractures. On March 17, 2009, Dr. David Mathis noted that plaintiff had undergone four prior knee surgeries. He recommended a bottom bunk for plaintiff's knee pain for one year and discharged him from the infirmary. *Id*.

On March 22, 2009, plaintiff complained of hip pain, severe headaches, and pain in his ear. Naprosyn , a non-steroidal anti-inflammatory drug ("NSAID"), was prescribed for pain and plaintiff was also continued on the Tylenol. On April 9, 2009, plaintiff complained of knee pain "since being pulled off the top bunk" and indicated that he could barely walk. He was evaluated by PA Ford on April 17, 2009, and the Naprosyn was renewed and a knee x-rays was ordered. The x-rays showed multiple small loose particles around and in the posterior of the knee joint and moderate sized spurs medially. Dr. Usha Humar read the x-rays and concluded that plaintiff suffered from moderate OA and multiple loose bodies in the knee. No fractures were noted. *Id*., Ex. A at Quilo Aff.; Ex B at pgs. 23-27.

According to defendants Quilo and Bruce, plaintiff offered no further complaints related to the assault until March 10, 2010, when he complained of pain in his back, neck, and right knee. He further complained of pain in his right shoulder since the March 14, 2009 altercation. Nurse Practitioner Frances Morthole's examination on that date revealed that plaintiff had tenderness in his right shoulder and right knee. She prescribed Naprosyn for the pain and ordered x-rays of plaintiff's right shoulder, cervical spine, and lumbar spine. The x-rays taken on March 16, 2010, showed no fractures or dislocations. The cervical spine x-ray, however, showed some changes consistent with degenerative disc disease and muscle spasms. ECF No. 14, Ex. A at Quilo Aff.; Ex. B at pgs. 28-32.

The medical defendants state that plaintiff offered no complaints until October 15, 2010, when he was seen in the Chronic Care Clinic. He informed Dr. Quilo that he felt his vertebrae "popping in and out with a thumping sound," that he was in constant pain, and that he felt some tingling. Plaintiff attributed all symptoms to the March 14, 2009 assault. Dr. Quilo noted, however, that plaintiff acknowledged that he had recently been lifting weights for four hours and that he worked out every day. Quilo continued the Naprosyn and found that the physical examination was otherwise normal and plaintiff could walk without assistance. *Id.*, Ex. A at Quilo Aff.; Ex. B at pgs. 33-34. Quilo affirms that medical staff will continue to monitor plaintiff's condition and treat him appropriately. *Id.*, Ex. A at Quilo Aff.

Plaintiff contends that even after going through the proper procedures to get help from the medical department he had to come to court to get a "rational decision" as to the proper treatment for his "real medical needs." ECF No. 18.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and

imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) *citing Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry.

The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at

9

the time. *Brown* 240 F. 3d at 390; *citing Liebe v. Norton*, 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

The court finds no factual basis to plaintiff's claim of deliberate indifference to his necessary medical needs. The record shows that he was treated for his minor objective injuries resulting from the March 2009 incident. Further, each time plaintiff filed a sick-call request he received evaluation and treatment for his knee, back, and shoulder pain from nurses, PAs, and a physician. Various x-rays and pain medication were ordered. All radiology reports showed no fractures. Plaintiff's cervical x-ray did reveal some changes consistent with degenerative disc disease and muscle spasms. Medical staff will continue to monitor his condition.

For the aforementioned reasons, the Court finds no Eighth Amendment violations. Defendants' motions,[3] construed as motions for summary judgment, shall be granted.[4] A separate Order follows.


Date: March 8, 2011.                    __/s/_____
                                        J. Frederick Motz
                                        United States District Judge

---

[3] Service of process was not effected on defendant King. In light of the rulings entered by the court, the complaint against King shall be dismissed.

[4] Given this determination, plaintiff's motion for appointment of counsel shall be denied as moot.